# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-1673
Filed January 28, 2026

———————————

**In the Interest of J.L., Minor Child,**

**S.R., Father,**
Appellant,

**A.T., Mother,**
Appellant.

**J.C., Intervenor,**
Appellant.

———————————

Appeal from the Iowa District Court for Polk County,
The Honorable Erik I. Howe, Judge.

———————————

**AFFIRMED ON BOTH PARENTS' APPEALS;
INTERVENOR'S APPEAL DISMISSED**

———————————

Ling Harl of Harl Law PLLC, Ankeny,
attorney for appellant father.

Chira L. Corwin of Corwin Law Firm, Des Moines,
attorney for appellant mother.

J.C., Indianapolis, Indiana, self-represented appellant intervenor.

1

Brenna Bird, Attorney General, Mackenzie Moran, Assistant Attorney General, attorneys for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

_____

Considered without oral argument
by Tabor, C.J., and Langholz and Sandy, JJ.
Opinion by Tabor, C.J.

**TABOR, Chief Judge.**

Three-year-old J.L.'s mother and father separately appeal a September 24, 2025, order terminating their parental rights. The juvenile court found that neither could be a safe parent, pointing to the mother's "persistent cycle" of addiction and the father's inability "to care for himself, let alone a young child." On appeal, they both challenge the statutory grounds for termination, contend that termination was not in their daughter's best interests, and ask for six more months to reunify with their child. Having independently examined the record, we reach the same conclusions as the juvenile court and affirm the termination order.[1]

## I.    Intervenor's Appeal

Not only do the parents contest termination, but fictive-kin intervenor J.C. also filed a pro se notice of appeal in the child-in-need-of-assistance (CINA) case,[2] purporting to challenge a September 23 order.[3] In her later-filed petition on appeal, she alleges a violation of constitutional rights, objects to the Interstate Compact on the Placement of Children (ICPC) process, and seeks a guardianship for J.L. The supreme court directed J.C. to "file a

---

[1] "We review termination proceedings de novo, examining both the facts and law and adjudicating anew those issues properly preserved and presented." *In re A.R.*, 932 N.W.2d 588, 589 n.1 (Iowa Ct. App. 2019). The juvenile court's factual findings do not bind us, but they deserve respectful consideration, especially on witness credibility. *Id.*

[2] "Three months after J.L. was born in Iowa, the child's mother transported J.L. to Indiana, where the child lived with a non-relative, J.C., for approximately five months—from October 2023 until March 2024." *In re J.L.*, No. 24-2071, 2025 WL 863558, at *1 (Iowa Ct. App. Mar. 19, 2025). Our court held that J.C., as fictive kin, could intervene in the CINA case. *Id.* at *4.

[3] On that date, the juvenile court issued an order denying the intervenor's motion to dismiss the CINA case.

statement indicating whether she is appealing from the September 24 termination order and, if so, whether this court has jurisdiction to consider her appeal from the termination order as she did not file a notice of appeal in the TPR proceeding." J.C. responded that she was appealing the termination order but did not address jurisdiction. The supreme court ordered that the jurisdiction question be submitted with this appeal.

J.C. filed her notice of appeal in the CINA action with the CINA case number rather than in the termination action with the termination case number. *See* Iowa R. App. P. 6.101(1)(a) (requiring notice of appeal "be filed in the district court and an informational copy with the supreme court"). In response to the supreme court's order, she did not file a corrected notice of appeal in the termination case nor did she timely address jurisdiction. Given these omissions, J.C. has not shown that we have jurisdiction to reach her claims. *See Sheldon v. Moyer*, 210 N.W.2d 597, 599 (Iowa 1973) ("In the absence of an appeal from the order . . . , we are without power to review it."). Thus, we consider only the parents' petitions on appeal.

## II.     Facts and Prior Proceedings

J.L. was born in July 2022. That summer, her mother was living at the House of Mercy, a rehabilitation center for substance-use disorders, after her son, R.L., had been removed from her custody. The mother had wrestled with addiction for over a decade. She lost her parental rights to two older children in 2017, largely over her use of methamphetamine and alcohol.

When J.L. was born, no one sought removal because the mother was making progress. The mother left that residential placement in May 2023. As the district court observed, "When she successfully discharged from the program there were no significant indicators that things would spiral as

4

quickly as they did." But, that fall, the mother missed several drug screens. To avoid having J.L. removed from her custody, the mother placed her then one-year-old daughter in the care of J.C. in Indiana. J.C. is the grandmother and guardian of J.L.'s half-sister, and had regular contact with the father. *J.L.*, 2025 WL 863558, at *3.

In October 2023, the State petitioned to have J.L. adjudicated as a CINA. And in November, the guardian ad litem (GAL) requested that J.L. be removed from parental custody, alleging that the Indiana placement was not safe for the child. Months later, the court granted those requests. Since her removal from parental custody in April 2024, J.L. has been living with her aunt and uncle in Iowa.

By the fall of 2024 both parents had moved to Iowa, allowing in-person visits with J.L. But the Iowa Department of Health and Human Services questioned the father's ability to care for a child because he was unable to care for himself due to intellectual disabilities.[4] He did not engage in any services in the CINA case, except for visits with J.L. By contrast, the mother did participate in services. She cycled through numerous treatment programs and sober-living communities—but would lapse into drug use and mental-health crises. The mother moved to Indiana in January 2025. She did complete an intensive outpatient program in spring 2025 but that was more than a year after J.L. was removed from her custody. And because the mother was living in a different state, she did not provide drug screens for the department.

---

[4] The father's competency was evaluated in connection with criminal charges in 2023. A psychologist reported that he had "extensive organic brain damage from a bullet wound" that left him unable to "maintain cognitive, behavioral, and emotional stability."

In April 2025, the State petitioned to terminate parental rights of both the father and mother. After hearings in July, the juvenile court terminated the mother's rights under Iowa Code section 232.116(1), paragraphs (e), (g), (h), and (*l*) (2025). The court terminated the father's rights under paragraph (h). The parents separately appeal.

### III.    Analysis

Termination cases involve three steps. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). First, the State must prove a statutory ground for termination under Iowa Code section 232.116(1). *Id.* Second, the State must show termination is in the child's best interests under section 232.116(2). *Id.* Third, parents may rely on exceptions to termination in section 232.116(3). *Id.* We only address those steps that the parents dispute. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

### A. The Mother's Appeal.

*Statutory grounds.* The mother challenges all four grounds cited in the termination order. "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on paragraph (h). That alternative requires the State to prove that the child (1) is three or younger; (2) has been adjudicated as a CINA; (3) has been removed from the parents' physical custody for at least six months; and (4) cannot be returned to their custody at the present time. Iowa Code § 232.116(1)(h); *In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (finding "at the present time" means the date of the termination hearing).

The mother does not contest the State's evidence in support of the first three elements, but she disagrees that there is clear and convincing proof

that J.L. cannot be safely returned to her custody. She points to her testimony that she had "been sober for over eight months at the time of trial." She also notes her regular attendance at therapy and successful completion of an outpatient chemical dependency treatment program.

Indeed, the mother made progress with her substance use. The juvenile court described her as being "in the best spot she had been in throughout the entire case." But the court's nagging concern was her "pattern of dramatic relapse following periods of improvement." The court concluded that "the record to date does not provide sufficient assurance that her sobriety will be sustained in a community setting over the long term." We share that concern.

And the State raises another salient point in its response to the petition on appeal. The mother chose to move to Indiana in January 2025, requiring video visits in place of in-person sessions. As the State observes, "there is a significant difference between regular participation in video visits and providing day-to-day care for a young child while still maintaining sobriety in a community setting." The department case manager also testified that an ICPC study would need to be requested, completed, and approved before J.L. could be reunited with her mother in Indiana.

Given the fragility of the mother's sobriety, coupled with her decision to move away from Iowa, we find clear and convincing evidence that J.L. could not be safely returned to her custody at the time of the hearing.[5]

---

[5] Our caselaw offers two formulations for what it means when a child "cannot be returned" to parental custody as provided in section 232.102, which discusses transferring the child's custody if staying in the home would be "contrary to the welfare of the child." Many cases cite *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992), which provides a child cannot be returned if it would expose him or her "to any harm amounting to a new child

*Bests interests of the child.* The mother next argues that termination of her parental rights is not in J.L.'s best interests. In deciding this second step, we "give primary consideration to the child's safety, to the best placement for furthering [her] long-term nurturing and growth, and to [her] physical, mental, and emotional condition and needs." *See* Iowa Code § 232.116(2). We also consider J.L.'s integration into her foster family. *See id.* § 232.116(2)(b).

The mother asserts that her video visits with J.L. went well, the department did not believe that she needed parenting classes, and she had a "true bond" with her daughter.[6] Those points appear true in this record. Yet we believe that termination of the mother's parental rights will keep J.L. safe and best support her long-term growth.

As J.L.'s GAL emphasized, J.L. "had a very unstable lifestyle prior to the last year of her life when she has been living with her aunt and uncle." The record shows that J.L. has been integrated into their family and they are willing to adopt her. That move toward permanency is in her best interests.

*Deferral of Permanency.* As her final issue, the mother asks for six more months to reunite with J.L. *See* Iowa Code § 232.117(5) (permitting court to deny termination and enter permanency order under section 232.104); *see also id.* § 232.104(2)(b) (listing permanency option of granting six months for parent to work toward reunification). The mother recalled testimony from

---

in need of assistance adjudication." But our supreme court often describes the fourth element as the inability to "safely return" children to their parents' custody. *See, e.g.*, *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *1–3 (Iowa Ct. App. Apr. 15, 2020) (collecting cases). Under either formulation, the State met its burden of proof here.

[6] We acknowledge the parent-child bond may fit into an analysis of best interests. *See In re L.A.*, 20 N.W.3d 529, 535 (Iowa Ct. App. 2025) (en banc).

the case manager that "the department would like to see at least a year of sobriety and engagement with [substance-use] services." The mother asserts the extra time would allow her to extend her eight months of sobriety beyond that one-year point. In her view, then she would be ready to resume custody.

The juvenile court disagreed, finding the mother "would need more than six months to show that her extensive history with substance abuse has subsided and that this period of sobriety will be long-lasting." We echo those sentiments. On this record, we are unconvinced that more time would remove the barriers to reunification. Nor would it be in J.L.'s best interests to wait for permanency. *See In re W.T.*, 967 N.W.2d 315, 323–24 (Iowa 2021) (evaluating whether six-month delay is in the child's best interests even if parent shows reunification would be possible).

## B. The Father's Appeal.

*Statutory grounds.* Like the mother, the father contests termination under paragraph (h). He maintains that the State did not offer clear and convincing evidence that J.L. could not be safely placed in his custody. He concedes that he did not obtain a mental-health evaluation as the department requested. But he claims that reports from his past evaluations were available to the department and questions the value of a new assessment. The father also acknowledges the limitations he faces due to his disability and that his original intent was only to support the mother in her effort to reunite with the child. But he describes himself as "self-sufficient and resourceful" and contends he could care for J.L. even without the mother.

The record does not support his contention. As the case manager testified, the father had a "very violent history." Because he did not engage in mental-health services, the department was rightly concerned that his

volatility "would continue to be a factor moving forward." Thus, we affirm the termination under paragraph (h).

*Best interests of the child.* The father next argues termination was not in J.L.'s best interests because their relationship was "significant and meaningful" to both father and daughter. It's true that the father was consistent in his interactions with J.L. and the visits went well. He brought along activities and food and engaged with his daughter. But the bright side of those supervised visits was overshadowed by the concern that the father's intellectual disability stood in the way of his independent parenting.

As noted above, J.L. found a stable home with her aunt and uncle. Remaining in their care is in her best interests.

*Deferral of Permanency.* Finally, the father asks for more time to "demonstrate his ability to assume parenting responsibilities." That request is unreasonable when the father chose not to engage in any services beyond visitation. As the State argues, no evidence in the record shows that the barriers to J.L.'s reunification with him would be resolved in six months or that delaying permanency would be J.L.'s best interests. *See W.T.*, 967 N.W.2d at 323–24.

**AFFIRMED ON BOTH PARENTS' APPEALS; INTERVENOR'S APPEAL DISMISSED.**